

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>LEONARD GEORGE HOROWITZ,<br><br>      Debtor. | Case No. 16-00239<br>Chapter 13 |
| LEONARD G. HOROWITZ and SHERRI KANE,<br><br>      Plaintiffs,<br><br>  vs.<br><br>PAUL J. SULLA, JR., et al.,<br><br>      Defendants. | Adv. Pro. No. 16-90015<br><br>Re: Docket No. 19 |

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

In this adversary proceeding, the Debtor, Leonard Horowitz, and his domestic and business partner, Sherri Kane, seek monetary and injunctive relief regarding real property located at 13-3775 Pahoa-Kalapana Road, Pahoa, Hawaii 96778 (the "Property"). Defendants Paul Sulla, Jason Hester, The Office of the Overseer, A Corporate Sole and its Successor, Over and For the Popular Assembly of Revitalize, A

Gospel of Believers ("GOB"), and Stephen Whittaker (collectively "Moving Defendants") seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), for lack of subject matter jurisdiction and failure to state a claim. Alternatively, the Moving Defendants ask the court to abstain pursuant to 28 U.S.C. § 1334(c). For the following reasons, I will grant the motion.

## I. BACKGROUND

### A. Relevant Facts

In 2004, Debtor Leonard Horowitz bought the Property from Cecil Loran Lee. Dr. Horowitz made a promissory note in favor of Mr. Lee in the original principal amount of $350,000.00. The note was secured by a mortgage on the Property.[1] Mr. Lee conveyed the Property to The Royal Bloodline of David ("RBOD"), a Washington nonprofit corporation, whose "Overseer" was Dr. Horowitz.[2]

On June 15, 2005, Mr. Lee filed a foreclosure action ("2005 state court lawsuit")[3] against Dr. Horowitz, RBOD, and Jacqueline Horowitz, Dr. Horowitz's then-wife. Defendant Paul Sulla, who is an attorney, represented Mr. Lee. Mr. Lee alleged that Dr. Horowitz defaulted under the mortgage, not by failing to make payment on the promissory note, but rather by committing waste on the Property and

---

[1] Dkt. # 57-2 at 6-7.

[2] Dkt. # 57-2 at 1-5.

[3] *Hester v. Horowitz,* Civil No. 05-1-0196, Circuit Court of the Third Circuit, State of Hawaii.

U.S. Bankruptcy Court - Hawaii   #16-90015   Dkt # 104   Filed  07/08/16   Page 2 of 19

failing to keep the Property insured. Mr. Lee also made claims for conspiracy, trespass to chattels, and fraud/misrepresentation. The defendants asserted counterclaims against Mr. Lee.

Philip Maise, who had his own judgment against Mr. Lee,[4] intervened in the foreclosure action to collect any funds awarded to Mr. Lee. As a result, most of the payments that Dr. Horowitz made on the note were received by Mr. Maise in partial satisfaction of his judgment against Mr. Lee.

In 2009, while the 2005 state court lawsuit was pending, Mr. Lee assigned the promissory note and mortgage to himself in his capacity as Overseer of GOB. About a month later, Mr. Lee died.[5] Jason Hester became the successor overseer of GOB and was substituted as the plaintiff in the 2005 foreclosure action.[6]

The court eventually rejected most of Mr. Hester's claims, including his prayer for foreclosure. The court apparently determined that Dr. Horowitz had failed to keep the property insured, but rather than permitting foreclosure of the mortgage, the court compelled Dr. Horowitz to obtain insurance.[7] A jury issued a verdict for damages of $200,000.00 in favor of Dr. Horowitz, Jacqueline Horowitz, and RBOD based on a

---

[4] Dkt. # 2-1 at 4-14.

[5] Dkt. # 2-2 at 8, 67-69.

[6] *Id.* at 2-4.

[7] Dkt. # 57-2 at 19-21.

3

counterclaim for fraud and misrepresentation, but the court vacated the jury verdict, and judgment was never entered on that verdict.[8]

Mr. Hester then claimed that Dr. Horowitz failed to make payments under the promissory note and commenced a nonjudicial foreclosure. On May 11, 2010, Mr. Sulla, as counsel for Mr. Hester, recorded a Mortgagee's Affidavit of Foreclosure Under Power of Sale, in which Mr. Sulla attested that the nonjudicial foreclosure sale occurred on April 20, 2010, and that the Property was sold to Mr. Hester, as successor overseer of GOB, for $175,000.00.[9]

On June 14, 2011, Mr. Hester quitclaimed the Property from himself, as successor overseer of GOB, to himself, in his individual capacity.[10] That same day, Mr. Hester recorded a mortgage on the Property listing himself as the borrower and Mr. Sulla as the lender.[11]

Despite the 2010 nonjudicial foreclosure, RBOD quitclaimed the Property to Dr. Horowitz and Ms. Kane on July 11, 2012.[12]

---

[8] Dkt. # 19-6 at 6; Dkt. # 57-2 at 21. Dr. Horowitz's appeal from the judgment in the 2005 state court lawsuit is pending before the Hawaii Intermediate Court of Appeal as Case No. CAAP 16-000162.

[9] Dkt. # 2-2 at 76-83; Dkt. # 2-3 at 1-13.

[10] Dkt. # 2-3 at 29-31.

[11] *Id.* at 34-51.

[12] Dkt. # 57-2 at 15-16.

U.S. Bankruptcy Court - Hawaii   #16-90015   Dkt # 104   Filed 07/08/16   Page 4 of 19

On August 11, 2014, Mr. Hester filed an action (the "2014 state court lawsuit") in state court against Dr. Horowitz, Ms. Kane, RBOD, and other defendants, in which Mr. Hester sought (among other relief) to quiet his title to the Property. The 2014 state court lawsuit was removed to federal court.[13] Mr. Sulla originally represented Mr. Hester, until the federal court disqualified him because Mr. Sulla was likely to be called as a witness.[14] Stephen D. Whittaker took over Mr. Hester's representation. The federal court remanded the case to state court. The state court entered judgment in favor of Mr. Hester, quieting his title to the Property, determining that he was entitled to possession of the Property, and dismissing all of the defendants' counterclaims. The state court also issued a writ of ejectment against the defendants.[15]

In the meantime, Dr. Horowitz filed a civil rights case against Mr. Sulla in the federal district court in this district (the "USDC case").[16] The district court has stayed

---

[13] The USDC case is *Hester v. Horowitz,* Civil No. 14-1-0413; the remanded state court case is Civil No. 14-1-0304, and is on appeal in the Intermediate Court of Appeal as Case No. CAAP 16-000163.

[14] Dkt. # 57-4 at 1-7.

[15] Dkt. # 57-4 at 9-11, 19-20. This court granted relief from the automatic stay to permit enforcement of the writ. Dr. Horowitz has represented that he and Ms. Kane have vacated the Property.

[16] *Horowitz v. Sulla*, Civil No. 15-00186.

5

the USDC case under the *Colorado River* doctrine.[17]

### B. The Bankruptcy Case and Adversary Proceeding

Dr. Horowitz's bankruptcy case and this adversary proceeding were both filed on March 9, 2016, before he and Ms. Kane were evicted from the Property. Dr. Horowitz and Ms. Kane allege a wide variety of misconduct on the part of Mr. Sulla, Mr. Hester, the judges who presided over the state court lawsuits, and others. In essence, they ask this court to overturn the final judgments of the state court.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

The Moving Defendants argue that this court lacks subject matter jurisdiction to hear the claims asserted by the Plaintiffs. I disagree in part.

#### 1. Overview of Bankruptcy Court Jurisdiction

The federal district courts have "original and exclusive jurisdiction" over all bankruptcy cases and original but nonexclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."[18] The federal district courts may refer to the bankruptcy courts some or all of the matters covered by these jurisdictional grants.[19] The district court for this district has referred all such

---

[17] *See Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

[18] 28 U.S.C. § 1334.

[19] 28 U.S.C. § 157(a).

6

matters to the bankruptcy court.[20]

The phrases "arising under title 11," "arising in a case under title 11," and "related to a case under title 11" are terms of art.[21] A proceeding "arises under" title 11 if it presents claims for relief created or controlled by title 11.[22] In contrast, the claims for relief in a proceeding "arising in" a title 11 case are not explicitly created or controlled by title 11, but such claims nonetheless would have no existence outside of a bankruptcy case.[23] The remaining category of bankruptcy jurisdiction, "related to" jurisdiction, is an exceptionally broad category encompassing virtually any matter either directly or indirectly related to the bankruptcy case.[24]

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of

---

[20] LR1070.1(a).

[21] *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1285 (9th Cir. 2013).

[22] *Id.*

[23] *Id.*

[24] *Id.* at 1287.

7

the bankrupt estate.[25]

The Moving Defendants correctly argue that none of the claims in this adversary proceeding "arise under" the Bankruptcy Code. Although the complaint does not clearly articulate its legal basis, it appears that those claims are based entirely on state law or nonbankruptcy federal law. The Moving Defendants are also correct that the claims in this case do not "arise in" the bankruptcy case because none of those claims are peculiar to the bankruptcy process; all of them could be asserted even if Dr. Horowitz had never sought bankruptcy relief (and most if not all of them were asserted before the bankruptcy filing).

But, contrary to the Moving Defendants's argument, some of the claims asserted in this adversary proceeding fall under "related to" jurisdiction. If Dr. Horowitz is successful, his bankruptcy estate will gain money or property, and that is enough to make this proceeding a "related to" proceeding. The Moving Defendants argue that the plaintiffs cannot prevail, but that argument confuses the merits of the plaintiffs' claims with the court's power to decide them. Therefore, the bankruptcy court has subject matter jurisdiction of Dr. Horowitz's claims.

Ms. Kane's claims are in a separate category, however. Ms. Kane is not a debtor in bankruptcy. Any recovery which she makes will not affect any bankruptcy case.

---

[25] *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original). The Ninth Circuit adopted the *Pacor* test in *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988).

8

Therefore, I will dismiss Ms. Kane's claims for lack of subject matter jurisdiction.

## B. Abstention

### 1. Mandatory Abstention

The Moving Defendants argue that the requirements for mandatory abstention are met. I disagree.

28 U.S.C. § 1334(c)(2) states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[26]

Thus, the court must abstain if each of the following seven elements are met:

> (1) A timely motion; (2) a purely state law question; (3) a noncore proceeding[,] § 157(c)(1); (4) a lack of independent federal jurisdiction absent the petition under Title 11; (5) that an action is commenced in a state court; (6) the state court action may be timely adjudicated; (7) a state forum of appropriate jurisdiction exists.[27]

In this adversary proceeding, factors 1, 3, 5, 6, and 7 may be met. The Moving Defendants timely filed their motion. For the reasons given below, this adversary

---

[26] 28 U.S.C. § 1334(c)(2).

[27] *Krasnoff v. Marshack (In re Gen. Carriers Corp.)*, 258 B. R. 181, 190 (B.A.P. 9th Cir. 2001), quoting *World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B. R. 603, 606 (Bankr. S. D. Cal. 1988).

9

proceeding is noncore. A state court action encompassing virtually all, if not all, of the claims alleged in the adversary complaint has already commenced. The state court could timely adjudicate those claims; indeed, the state court has already adjudicated them. The state court has jurisdiction to decide those claims.

But the second and fourth factors are not met. The complaint alleges federal civil rights, RICO, and FDCPA claims, not just state law claims. A federal district court could have jurisdiction over those claims by virtue of its federal question jurisdiction, and could also have supplementary jurisdiction of the state law claims.[28]

Because two of the seven requirements for mandatory abstention are not met, this adversary proceeding does not qualify for mandatory abstention.

### 2. Discretionary Abstention

28 U.S.C. § 1334(c)(1) provides for discretionary abstention:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[29]

According to the Ninth Circuit, a court should consider twelve factors in determining whether discretionary abstention is appropriate:

---

[28] 28 U.S.C. § 1331; 28 U.S.C. § 1367(a).

[29] 28 U.S.C. § 1334(c)(1).

U.S. Bankruptcy Court - Hawaii   #16-90015   Dkt # 104   Filed 07/08/16   Page 10 of 19

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.[30]

The court must weigh each of these factors against the others. Unlike mandatory abstention, a court can apply discretionary abstention even if fewer than all of the factors weigh in favor of abstention.[31] In this case, the factors weigh heavily towards abstention.

### a. Factor 1- Effect on Administration of the Estate

If anything, abstention would have a beneficial effect on the administration of the estate. The state court has decided all, or virtually all, of the claims asserted in this adversary proceeding. Even assuming that Dr. Horowitz and Ms. Kane are entitled to

---

[30] *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990) (quoting *In re Republic Reader's Serv., Inc.*, 81 B. R. 422, 429 (Bankr. S. D. Tex. 1987)).

[31] *See, e. g., id.*

relitigate those issues, doing so would delay this case and drive up its cost. Thus, this factor weighs in favor of abstention.

### b. Factor 2- State Law Issues Predominate Over Bankruptcy Issues

There are no issues of bankruptcy law in this adversary proceeding. This factor weighs in favor of abstention.

### c. Factor 3- Difficulty or Unsettled Nature of Applicable Law

The applicable law is not over-complicated or novel. Thus, this factor weighs against abstention.

### d. Factor 4- Presence of a Related Proceeding in State Court

Dr. Horowitz and Ms. Kane have asserted virtually all, if not all, of the claims in this adversary proceeding in the USDC case or the 2014 state court lawsuit. Thus, this factor weighs in favor of abstention.

### e. Factor 5- Jurisdictional Basis Other than 28 U.S.C. § 1334

The federal district court would have "federal question" jurisdiction of the civil rights, FDCPA, and RICO claims. But the district court has already chosen to stay the USDC case, effectively declining to exercise that jurisdiction. Accordingly, this factor weighs slightly in favor of abstention.

### f. Factor 6- Degree of Relatedness or Remoteness to Bankruptcy Case

Dr. Horowitz's claims are related to his bankruptcy case because, if he prevails,

U.S. Bankruptcy Court - Hawaii    #16-90015    Dkt # 104    Filed 07/08/16    Page 12 of 19

his estate will be augmented. But Ms. Kane's claims have nothing to do with any bankruptcy case. This factor is in equipoise.

### g. Factor 7- Substance Rather than Form of "Core" Proceeding

This factor requires me to consider whether this proceeding is core or noncore in whole or in part.[32]

#### i. Core versus Noncore Distinction

The proceedings subject to bankruptcy court jurisdiction are divided into "core" bankruptcy proceedings and "noncore" proceedings.[33] The phrase "core proceedings" is best understood in historical context.

In 1978, Congress enacted the Bankruptcy Code, which (among many other things) dramatically increased the powers of bankruptcy judges. The Code "mandated that bankruptcy judges 'shall exercise' jurisdiction over 'all civil proceedings arising under title 11 or arising in or related to cases under title 11.'"[34]

In 1982, the United States Supreme Court held, in the *Marathon* case,[35] that Congress had granted too much power to bankruptcy judges who lack life tenure as

---

[32] *Eastport Assoc. v. City of Los Angeles (In re Eastport Assoc.)*, 935 F.2d 1071, 1076 (9th Cir. 1991).

[33] *Stern v. Marshall,* 564 U.S. 462, 474-75 (2011).

[34] *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2170-71 (2014)-(citing 28 U.S.C. § 1471(b)-(c)).

[35] *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U. S. 50 (1982).

13

required by Article III of the Constitution. In essence, the Court held that Congress may not empower a judge lacking Article III protections to enter final judgment in a case brought by the representative of a bankruptcy estate against a third party on state law claims (at least where the third party objects).

Congress amended the statutes in 1984 in an attempt to solve the constitutional problem identified in *Marathon*. Congress gave the district courts "original and exclusive jurisdiction of all cases under Title 11,"[36] and "original, but not exclusive, jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11[,]"[37] Congress staffed the bankruptcy courts with bankruptcy judges appointed to fourteen-year terms by the respective courts of appeal,[38] and authorized (but did not require) the district courts to refer to the bankruptcy courts matters falling under bankruptcy jurisdiction.[39]

Congress further divided bankruptcy court jurisdiction into "core proceedings" and so-called "noncore" proceedings. The core/noncore distinction matters for at least two purposes.

First, bankruptcy court decisions in core and noncore proceedings are subject to

---

[36] 28 U.S.C. § 1334(a).

[37] *Id.* § 1334(b).

[38] *Id.* § 152(a).

[39] *Id.* § 157(a).

14

U.S. Bankruptcy Court - Hawaii   #16-90015   Dkt # 104   Filed 07/08/16   Page 14 of 19

different standards of appellate review. In core proceedings, bankruptcy judges can render final judgments that are reviewed under the usual appellate standard (findings of fact are reviewed for clear error and conclusions of law are subject to de novo review).[40] In noncore proceedings, bankruptcy judges can render a final judgment only with all parties' consent.[41] In the absence of unanimous consent, the bankruptcy court must issue proposed findings of fact and conclusions of law for the district court's de novo review.

Second, the core/noncore distinction plays a significant role in the bankruptcy court's decision whether to grant or deny an abstention motion. Whether an action is a core or a noncore proceeding is a factor to be considered in making both mandatory and permissive abstention rulings.[42]

Core proceedings consist of all actions "arising under" title 11 and also those "arising in" a case under title 11.[43] "[A] core proceeding is one that 'invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could

---

[40] 28 U.S.C. § 157(b)(1).

[41] *Id.* § 157(c).

[42] *See* 28 U.S.C. 1334(c)(1), (2); *see also In re Eastport Assocs.*, 935 F.2d 1071 at 1075 (identifying permissive abstention factors).

[43] *Id.* at 1053.

arise only in the context of a bankruptcy case.'"[44] 28 U.S.C. § 157(b)(2) contains a non-exhaustive list of core bankruptcy proceedings. Proceedings that are not core proceedings but are related to a bankruptcy case are called "noncore" proceedings.[45] Proceedings are "related to" a bankruptcy case and thus "noncore" if "they do not depend on the Bankruptcy Code for their existence and they could proceed in another court."[46]

This history shows that Congress invented the concept of "core proceedings" to address the constitutional problem identified in *Marathon*. Therefore, in case of doubt, the statutory definition of "core proceedings" should be interpreted to exclude proceedings in which the Constitution precludes a bankruptcy judge from entering final judgment under *Marathon*, i.e., claims by representatives of the estate against non-consenting third parties to recover money or property for the estate on non-bankruptcy law grounds.

As I have noted above, Dr. Horowitz's claims all turn on state law or nonbankruptcy federal law; thus, Dr. Horowitz's claims are "related to," noncore proceedings. (As is also noted above, Ms. Kane's claims are not even "related to" any

---

[44] *Battle Ground Plaza, LLC, v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010) (quoting *Gruntz v. Cty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000)).

[45] 28 U.S.C. § 157(c).

[46] *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004)).

16

U.S. Bankruptcy Court - Hawaii   #16-90015   Dkt # 104   Filed 07/08/16   Page 16 of 19

bankruptcy case, but if they were, those claims would be noncore.) Dr. Horowitz contends that this action is a core proceeding under § 157(b)(2)(A), "matters concerning the administration of the estate;" subsection (E), "orders to turn over property of the estate;" subsection (H), "proceedings to determine, avoid, or recover fraudulent conveyances;" and subsection (O), "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship . . . ." But these provisions must be read against the background of *Marathon*. Under *Marathon*, a bankruptcy judge cannot enter final judgment on Dr. Horowitz's claims. The seventh factor therefore strongly favors abstention.

### h. Factor 8- Feasibility of Severing State Law Claims from Core Bankruptcy Matters

Because none of the claims in this case are "core proceedings," severing the state law claims would leave nothing for this court. Therefore, the eighth factor strongly favors abstention.

### i. Factor 9- Burden of Bankruptcy Court's Docket

The extensive record in the state court proceedings, and the number, volume, and venom of the plaintiffs' filings, make it clear that this adversary proceeding would be burdensome. The burden is particularly unwarranted because the state court has

17

U.S. Bankruptcy Court - Hawaii    #16-90015    Dkt # 104    Filed 07/08/16    Page 17 of 19

already decided the case against the plaintiffs. This factor weighs in favor of abstention.

### j. Factor 10- Likelihood that Commencement in Bankruptcy Court Involves Forum Shopping

The Debtor and Ms. Kane are clearly engaged in forum shopping. The state court and the district court have ruled against them. They have more or less admitted that they came to this court hoping for a better outcome. This factor weighs heavily in favor of abstention.

### k. Factor 11- Existence of a Right to a Jury Trial

The Plaintiffs have requested a jury trial on the claims asserted in their complaint, and appear to be entitled to one. Because the bankruptcy court in this district does not have the power to conduct jury trials, this factor weighs in favor of abstention.

### l. Factor 12- Presence of Nondebtor Parties

The majority of the parties to this case are nondebtors. Only one of the two plaintiffs, and none of the defendants, is in bankruptcy.

Under the *Tucson Estates* analysis, the facts of this case heavily favor the exercise of discretionary abstention under 28 U.S.C. § 1334(c)(1). Therefore, discretionary abstention is appropriate.

U.S. Bankruptcy Court - Hawaii    #16-90015    Dkt # 104    Filed  07/08/16    Page 18 of 19

## IV. CONCLUSION

For these reasons, all claims against the Moving Defendants in this adversary proceeding are DISMISSED.

## END OF ORDER

19